†STATE OF OHIO EX REL. PALMER v. FRANCES L. S. DARBY.

**1. QUESTION AS TO VACANCY IN OFFICE.**

The exclusive right of the council to judge of the election returns and qualifications of its own members, under sec. 1679, Rev. Stat., does not extend to a case where the controversy is whether, under the law, there is any vacancy or office then to be filled by election or appointment.

**2. APPOINTMENT MUST BE FOR UNEXPIRED TERM.**

Section 1724, Rev. Stat., must apply to determining whether the appointment shall be until the next election or for an unexpired term, and under that section an appointment of a councilman by the mayor must be for the unexpired term of the person elected to the office.

**3. MISAPPREHENSION CANNOT ABRIDGE TERM.**

The misapprehension of the true tenure of the appointee, on the part of the mayor, the appointee or others, cannot abridge the term fixed for his continuance in office.

**4. APPOINTEE MAY HOLD UNTIL SUCCESSOR IS ELECTED AND QUALIFIED.**

Under secs. 1713 and 1724, Rev. Stat., in connection with the more general provisions o sec. 8, councilman appointed for an unexpired term may hold office until his successor is elected and qualified.

**5. APPOINTMENT OR ELECTION ANTICIPATORY OF VACANCY.**

While regular elections are required and held in anticipation of the expiration of an official term, and appointments are made, while the person holding the office is still serving his term, yet neither an election nor an appointment to fill a causal vacancy can be held or made anticipatory of the vacancy nor until its actual vacancy.

---

†This judgment was affirmed by the Supreme Court, three judges dissenting. No report. 52 O. S., 611.

**6. CONSENT OF COUNCIL NEED NOT BE BY ACTUAL VOTE.**

While it is not absolutely required, upon the appointment by the mayor of a councilman to fill a vacancy, that the consent of the council should be expressed by actual vote upon the direct question, such consent must be manifested by some affirmative act, mere silence or failure to object not being sufficient.

**7. ELECTION OF APPOINTEE CLERK *pro tem* IS SUFFICIENT.**

A record of the proceedings of the council indicating that the person appointed to fill a vacancy, was, after his appointment, elected clerk *pro tempore*, together with like evidence of recognition as a member, is sufficient to show that he was then a member and the appointment having been made in the presence of the council, its members knew that his only claim to a seat was by virtue of that appointment which only needed their consent to make it effective.

**8. IS NOT MERELY RECOGNITION AS *de facto* MEMBER.**

Such affirmative action of the council should be allowed a broader significance than being treated as merely recognition as a *de facto* member, as it fully shows the consent required by sec. 1724, Rev. Stat.

**9. WHEN COUNCIL MAY ACT UPON APPOINTMENT.**

The council is not required to take immediate action upon the appointment but whenever it gives the requisite consent it cannot thereafter undo its effect, nor oust one who then becomes a *de jure* member, except in the manner provided by statute for his removal.

## QUO WARRANTO.

BENTLEY, J.

This action in quo warranto is brought for the purpose of obtaining a judgment ousting the respondent from exercising the office of councilman of the village of Wauseon, Fulton county, O., and declaring the relator entitled thereto.

By the pleadings and proof it appears that in June, 1892, Wm. C. Barnes held said office of councilman, having been elected thereto for the term of two years in the spring of 1891 and having been duly qualified. On June 20, 1892, it was shown to the mayor and council of the village that Wm. Barnes had removed from the village, and the mayor thereupon duly declared said office vacant, and with the advice and consent of the council, duly expressed by a yea and nay vote, duly rendered, duly appointed John S. Dimke to fill said vacancy. On July 18, 1892, Dimke having refused to accept said appointment or to qualify, the mayor appointed Myron T. Palmer, the relator, to fill the vacancy.

Mr. Palmer, being present at the time, was sworn in and took his seat as councilman.

At the spring election of 1893, George W. Hartman was duly elected to said office, and having refused to qualify, on April 17, 1893, the mayor declared a vacancy in said office and again appointed the relator to fill it, and the relator being present at the time, again took the oath of office and continued to discharge the duties of councilman.

By reason of some misapprehension or other cause, the names of no candidates for said office were placed on the tickets of either or any political party in the spring of 1894, so, of course, no one was elected thereto.

Thereupon a special meeting of the council was called for April 12, 1894, and at that meeting, the mayor and six members of the council, including the relator, were present. At this meeting the mayor declared said office of councilman vacant, "on account of expiration of time of Myron T. Palmer, an acting member" as the record recites, and appointed the respondent, Darby, thereto, and on motion then and there made to confirm said appointment three of said councilmen voted yea and three (including Palmer, the relator,) voted nay, and the mayor's name being thereupon called, he voted yea, and declared the motion to confirm carried, whereupon the respondent was sworn in and took his seat as councilman and has since continued to act as such, in place of Palmer, who has not since acted, but brings this suit in the name of the State to determine the right of himself and the respondent to the office.

On behalf of the respondent it is urged that this court has no jurisdiction of such a case, since by sec. 1679, Rev. Stat., the council is made "the judge of the election returns and qualifications of its own members." But we do not regard this exclusive right of the council as extending to a case where the controversy is not simply which of two or more persons was properly selected to fill a conceded vacancy then to be filled by some one, but where the point in dispute is whether under the law there is any vacancy or office then to be filled by any election or appointment. It would hardly be contended, for instance, that a council could assume that the term of one of its members regularly elected under the law

for two years, expired in one, and upon some other person being elected or appointed then to such supposed place, could vote to seat the new claimant in place of the old member and successfully defend its action and the old member be concluded by the action of the council under this section.

The principles recognized and enforced in the case of the *State* v. *O'Brien,* 47 O. S., 473, (see 47 O. S., 566, and 44 O. S., 469,) in our view, forbid the conclusion that sec. 1679 confers the exclusive, if any, power on the council to adjudge in such a case as is here presented.

If the relator has any right to exercise the powers and perform the duties of the office, it is wholly because he was legally an officer whose rightful incumbency had not terminated when the respondent was appointed, and no action of the council other than by the motion of a member (1684–5) according to the requirements of the statute, could interfere with a tenure positively fixed by law.

We must inquire then, by what if any rightful and definite tenure was Palmer holding the office when Darby was appointed, or, in other words, was there a vacancy which could lawfully be filled by appointment?

Under sec. 1673, the regular term of councilmen is two years. In case of a vacancy in the council, were it not that sec. 1724 makes special provision applicable only to councilmen, it might well be held that the more general provision of sec. 1713 in the chapter on "Officers of cities and villages" and which is made applicable "unless otherwise provided in this title," would apply, but since sec. 1724 being thus special and containing provisions regarding the time for which vacancies in the council may be filled, wholly different from those in sec. 1613 regarding vacancies in municipal offices, generally, we think it clear that notwithstanding the reference to sec. 1713 in sec. 1693, these provisions of sec. 1724 must govern in determining whether the appointment shall be "till the next annual municipal election" or "for the unexpired term." The appointment, therefore, must be for the unexpired term. We think it is not competent for the mayor to fix the term of the appointment otherwise, and his appointment of a councilman, when made with the consent of the council, is for the unexpired term of the person who after being elected and qualified, ceases to be councilman before the expiration of the term for which he was elected. And the misapprehension of the true tenure of the appointee, on the part of the mayor, the appointee or others cannot abridge the term fixed by law for his continuance in office.

Sec. 1713 also provides, that, "unless otherwise provided, all municipal officers shall serve until their successors are qualified."

Section 8 and sec. 11, Rev. Stat.

Mechem, in his work on Public Offices and Officers, sec. 402, lays down the rule that officers appointed to fill vacancies in elective offices are generally considered as appointed for the remainder of the unexpired term of the person whose place they fill, and that on failure to elect at the regular election, they hold over, and that if the provision is that they are to continue until their successors are elected and qualified there must be an election and not an appointment of a successor.

In *State* v. *McGregor*, 44 O. S., 630–1, the Supreme Court held that sec. 1208 and not sec. 11 applied to the filling of vacancies in the office of sheriff and coroner. And we suppose that in view of the particular provision in sec. 1713 and 1724 in connection with the more general provision of sec. 8, that if Palmer was legally appointed and confirmed to fill the unexpired term of Barnes, which would end in the spring of 1893, he would hold the office till his successor is *elected* and qualified.

If, in 1892, Palmer was duly appointed by the mayor with the advice and consent of the council properly expressed, there has never been a vacancy in the office since which could be legally filled by appointment and the appointment of 1893, however formal, was of no effect. And if he was not so appointed and confirmed in 1892, he was simply a *de facto* councilman, at least till the alleged

appointment of 1893, and there was, during all that period, a continuous vacancy which might at any time have been filled by appointment. And, of course, could have been filled by his own appointment, in the spring of 1893, or before or since, or if he was never legally appointed and confirmed, by the appointment of another person, Darby for instance.

While regular elections may and are required to be held in anticipation of the expiration of an official term, and the appointments to an office originally appointive may be made while the person holding the office is still serving his term and in anticipation of its regular expiration yet neither an election nor an appointment to fill a casual vacancy can be .held or made anticipatory of the vacancy nor until its actual occurrence. This is manifest from the secs. 1713 and 1724 providing for the filling of such vacancy, and from the opinion in *State* v. *McGregor, supra*.

It becomes, therefore, of the first importance, to determine whether at any time since the vacancy occasioned by Barnes' removal from the village, Palmer was legally appointed by the mayor, by and with the consent of the counsel, as required by sec. 1724. We regard that section as expressing the requirements of law as to the appointment of councilmen to fill vacancies rather than the more general secs. 1711 and 1713 for the reason that it, 1724, is especially applicable to such officers only. It will be noticed that there is a difference in the wording of the three sections, sections 1711 and 1713 each requiring that the appointment be made "with the *advice* and consent of the council" and sec. 1722 requiring that it be made "by and with the consent of the council." Whether the addition or omission of the word "advice" is of itself of any significance may not be clear, but the iteration or insertion, rather, in sec. 1724, of the requirement that the council should consent, would seem to indicate that it was intended to make full provision in this section alone for such appointments,. and we think that the requirement of sec. 1711 as to the voting and recording of votes does not apply to this case. There must be, however, a *consent* to the appointment on the part of the council, and according to authorities cited by counsel for the respondent, such consent must be manifested by some affirmative act, and mere silence or failure to object on the part of the council is not sufficient. Whether or not there was a direct vote upon the question of confirming the appointment of Palmer in July, 1892, was a matter regarding which the evidence before us in the trial was conflicting, and we think there was not a preponderance of the evidence that such direct vote was had, but the weight of the evidence was otherwise.

Can the requisite consent be given by the council otherwise than by a vote upon the express question of consenting to such appointment? If we were permitted to determine this fact of consent by giving effect to those things by which the condition or state of the minds of men is usually determined in legal proceedings, there could be no hesitation in declaring that the council did consent to his appointment, since without the sign of objection by anyone, Mr. Palmer upon being appointed took his seat as councilman and became an active and frequent participant in the proceedings of the council and so continued for a year and three-quarters or more, and was always in every way recognized as a member, his name being on the rolls and called for, each vote taken by yeas and nays. He introduced resolutions, seconded motions, served on committees, made reports to the council, which were accepted and adopted, and during the entire period when meetings were held, almost weekly, his voice, his vote and his presence were always recognized by the other members of the council, and his rare absences were carefully noted by the clerk upon the minutes which the council approved.

We have looked through the records of the council offered in evidence to see whether by any affirmative action it has manifested its consent to Mr. Palmer's appointment. The council were not required to take action upon the appointment directly as it was made, but when the appointment was made before the council, it could then act, or defer action upon it, and it was competent for it to act upon the

matter until the Mayor or the force of circumstances had withdrawn the nomination. Until withdrawn and before action upon it the nomination was a continual proposition before the council for its action, but, whenever it gave the requisite consent in the requisite way, it could not thereafter undo its effect, nor oust one who thus became a *de jure* member, except in the manner provided by statute for his removal. We think that it is not absolutely required that the consent of the council should be expressed by actual vote upon the direct question of approving the mayor's choice, if it be plainly and *affirmatively* given.

Does the record of the proceedings of the council sufficiently exhibit such affirmative action consenting to Palmer's appointment?

We think it does.

On August 15, 1892, the clerk being absent, the council itself elected Mr. Palmer as clerk, *pro tempore*. By sec. 1755, this selection could only be of one of the members of the council. So that at least thus early after his appointment, Mr. Palmer was by affirmative vote of the council recognized directly as a member, and though the vote was not expressly upon the question of his membership it was a sufficient declaration that the council *consented* that he was then a member, and the appointment being made in the presence of the council, its members knew that his only claim to a seat was by virtue of that appointment which only needed their consent, in session given, to make it effective. Again: It was the duty of the clerk (sec. 1755) to record the proceedings of the council, and it was a proper if not a necessary part of the record of each meeting that it should state the members present. During the time while Palmer served as councilman, the council met very frequently, on an average as often as once a week, and the clerk in the record of each meeting gave the name of Palmer as one of the members of the council either as present or absent (and he was almost invariably present), and such record was approved by the council at its next meeting, as shown by its records.

The council consisted of six members and, of course, under the provisions of sec. 1693, it required four affirmative votes for the passage of legislation (unless the case fell within the exception provided in that section), and on many occasions after the appointment of Palmer in 1892, beginning as early as Sept. 5, 1892, only four members of the council, including Palmer, were present at meetings when resolutions and ordinances of great importance were passed by yea and nay vote, all of said four present being recorded as voting aye; certain of the ordinances thus passed appropriating large sums of money out of the corporation treasury, and others making assessments for improvements, etc., and the record of such meeting and proceedings being approved by the council at the next subsequent meeting.

On April 17, 1893, at the organization of the council for that year, the mayor appointed Palmer on certain of the standing committees, and chairman of one committee thus clothing him, apparently at least, with the great and serious powers which, under sec. 1687, may be exercised by such chairman and committee, and this appointment seems to have been approved by the council.

On April 24, 1893, Palmer's committee having reported to the council on a certain matter, Palmer moved to recommit it to the committee and his motion was carried by a yea and nay vote recorded on the records, showing six councilmen (of course, including Palmer) voting yea.

Again, on November 20, 1893, in the absence of the mayor from the council meeting of that date, the council chose Palmer as its temporary chairman, and under sec. 1675, such person appointed to temporarily take the place and perform the duties of mayor must himself be a member of the council.

It may be said that all this was merely the recognition of Palmer as a *de facto* member of the council and should not be regarded as equivalent to a vote directly upon his confirmation, but considering that his *de facto* character only needed at any moment after his appointment, the *consent* of the council in order to make his position *de jure*, such affirmative action of the council itself, ought to be allowed

a broader significance, and, we think, fully shows the *consent* required by sec. 1724, if not the "advice and consent" which under secs. 1711 and 1713 in case of certain officers must be shown by yea and nay vote recorded on the journal.

Such being our conclusion, it is unnecessary for us to consider the arguments as to the mayor's power to vote in case of a tie upon the question of the confirmation of his appointee, Mr. Darby, or whether, had there been a vacancy in April, Mr. Darby might be ousted at the suit of the state on the relation of Palmer, for, there being no vacancy to fill, and Mr. Palmer, the *de jure* incumbent until his successor is elected and qualified, the appointment of 1894, even had it been confirmed with the utmost unquestionable formality, would have been ineffective to confer any right upon Darby. Judgment of ouster against Darby and for the induction, or rather the restoration, of Palmer will be entered at the costs of the respondent, Darby.

*Hurd, Brumback & Thatcher*, for relator.

*Doyle, Scott & Lewis* and *W. W. Touvelle*, for defendants.